MARY J. MURRAY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Murray v. Commissioner
Docket No. 8896-77.
United States Tax Court
T.C. Memo 1978-353; 1978 Tax Ct. Memo LEXIS 162; 37 T.C.M. (CCH) 1482; T.C.M. (RIA) 78353; September 7, 1978, Filed *162 Ronald D. Fairchild, for the petitioner. William R. McCants, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined a deficiency in the income tax of the petitioner for the calendar taxable year of 1974 in the amount of $ 4,073.40. Because of concessions made by the parties, there remains for decision the determination of the basis of petitioner in computing gain on the sale of a residence in which petitioner acquired the interest of her former husband, Nelson A. Murray, pursuant to a judgment dissolving their marriage. [1]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated by this reference. At the time of the filing of the petition herein, petitioner resided in Ponte Vedra, Florida. She filed an individual Federal income tax return for the taxable year 1974 with the Director of the Southeast Service Center, Chamblee, Georgia. Petitioner and Nelson A. Murray (hereinafter Mr. Murray) were married on June 30, 1938. They lived together *163 as husband and wife until December 1970. As a result of the marriage, they had three children. On April 4, 1972, the marriage was dissolved by the Fourth Judicial Circuit Court, Duval County, Florida. At all times material herein, Mr. Murray was a doctor of medicine practicing in the field of pathology. In 1952, he set up a pathological laboratory as sole proprietor. He maintained a staff there which performed chemical tests, urine tests, blood tests, anatomical diagnostic biopsies, autopsies and related activities. For the most part, such services were performed on a referral basis for other doctors. During the period from 1952 until December 18, 1970, petitioner worked at the pathological laboratory. She performed a variety of services, including office manager, bookkeeper, secretary and general manager. During the period that she was raising her three children, she was at the laboratory part time and spent the rest of her time at home. When petitioner ceased to be employed at the laboratory, additional clerical staff was engaged to perform the same services. As a result of an automobile accident, Mr. Murray was hospitalized continuously for approximately five to six *164 months in 1967 and 1968. During that time, petitioner managed the laboratory and assumed some of Mr. Murray's administrative duties. The medical services were performed by other pathologists on a temporary basis from Mayo Institute. Petitioner received no salary for her work at the laboratory until about 1968, when she was paid a salary of $ 1,025 per month. On December 18, 1970, the parties were separated and petitioner was no longer permitted to work at the laboratory. Mr. Murray continued to make such payments to petitioner, depositing the checks in her bank account when she refused to endorse the checks. The gross fees, operating expenses and net profits from the laboratory for the taxable years 1968 to 1972, inclusive, were as follows: Gross Fees
Total Operating
Net Year
Received
Expenses
Profit
1968
$ 206,714.64
$ 145,665.64
$ 61,049.00
1969
211,765.85
118,128.79
93,637.06
1970
219,528.50
122,370.85
97,157.65
1971
200,327.95
109,799.35
90,528.60
1972
187,338.00
110,736.29
76,601.71
All the receipts of the laboratory went into a joint bank account of petitioner and Mr. Murray. Although petitioner was authorized to *165 write checks on the account, the checks she wrote were mainly for expenses. At the time of the dissolution of their marriage, petitioner and Mr. Murray owned, as tenants by the entirety, a residence located at 5164 Yacht Club Road, Jacksonville, Florida. As of April 4, 1972, the fair market value of such residence was $ 182,000. Petitioner had contributed $ 10,000, received as a gift from her parents, towards the purchase of that residence. From time to time petitioner had also invested small sums in the laboratory business. Petitioner and Mr. Murray also owned certain unimproved properties, some held jointly, including certain lots in Orange Park, Florida, and others in the name of petitioner, individually. On January 10, 1972, Mr. Murray filed a Petition for Dissolution of Marriage in the Circuit Court, Fourth Judicial Circuit, Duval County, Florida, for a dissolution of their marriage. On January 31, 1972, petitioner filed an answer opposing the dissolution of the marriage and further alleging: 4. The wife further alleges that the husband and wife are the co-owners of a laboratory business which has been in existence for many years. That the wife herein has for a *166 long period of time worked in said business, and materially contributed to its establishment as a highly profitable medical laboratory. That such work has been over and above that normally contributed by a wife, and she has materially contributed to the economic wellbeing of the parties. That said wife believes that she is entitled to a portion [sic] equity in the income of said laboratory as a result of her contribution over and above that normally allowed as and for alimony payments. Said wife requests and prays this Court to declare such interest to be a lien upon the income from said medical laboratory. 5. Further, the respective parties hereto own as estate by the entireties a residence and furniture and furnishings located at 5164 Yacht Club Road, Jacksonville, Florida, which said residence the wife needs as a home. 6. Further, that the wife herein is without employment and without funds other than that received from the husband, and is therefor [sic] unable to support herself and pay the costs of these proceedings and a reasonable attorneys [sic] fee, and affirmatively prays for such relief and for alimony, both temporary and permanent. * * *
On April 4, 1972, a *167 final judgment was entered dissolving the marriage between petitioner and Mr. Murray pursuant to a stipulation filed by the parties. The stipulation provided, inter alia, as follows: 1. Husband agrees to convey to Wife all of his right, title and interest in and to the home of the parties located at 5164 Yacht Club Road, Jacksonville, Florida, 32210, and the furniture and fixtures therein subject to the mortgage which encumbers same, and by the acceptance of the deed of conveyance, Wife shall assume and agree to pay said mortgage and hold Husband harmless from any and all further liability thereon. Documentary stamps are Wife's responsibility. 2. Husband agrees to convey to Wife all of his right, title and interest in and to the jointly owned lots located in Orange Park, Florida, which lots are located in the subdivision known as Doctors Lake Estates. Documentary stamps are Wife's responsibility. 3. Husband agrees to transfer to Wife title to the 1971 Buick Riviera automobile.
4. Husband agrees to deliver to Wife $ 7,500.00 of Jax Utilities bonds or their cash equivalent. These will be delivered to Wife upon her delivering the information and executing the documents *168 referred to in paragrah 6, infra. 5. Wife shall be responsible for paying her own attorney of record for all of his services rendered or to be rendered herein, and for all Court costs incurred by her in connection with these proceedings. In addition thereto, Wife waives any right she might have to alimony or support of whatsoever nature or kind from Husband. * * *
Pursuant to the judgment of the Court, Mr. Murray transferred to petitioner the interest which Mr. Murray held as a tenant by the entirety in both the residence on Yacht Club Road and in the lots in Orange County, Florida. Petitioner sold the residence in 1974.In his notice of deficiency, respondent determined that petitioner realized a gain of $ 201,323 on on the sale of the residence, computed as follows: Sales Price
$ 303,164
Basis in one-half share acquired
from Mr. Murray (FMV of his interest
at time of transfer)
$ 57,000
Basis of petitioner's one-half share
44,200
Total Basis
$ 101,200
Expenses of Sale
$ 641
Gain
$ 201,323
OPINION Nelson A. Murray and petitioner were husband and wife. After more than 30 years of marriage, they were separated in December 1970, and the marriage *169 was dissolved by judgment of the Court on April 4, 1972. As part of that judgment, Mr. Murray transferred to petitioner his interest in the family residence as tenant by the entirety, subject to the mortgage thereon. The parties stipulated that the fair market value of the residence as of the date of the transfer was $ 182,000, subject to a mortgage of $ 12,000. Petitioner sold the residence in 1974. For the reasons stated in the companion case of Nelson A. Murray, Docket No. 10342-75, the petitioner is entitled to use as her basis in determining the gain on the sale of the residence in question, the sum of her original basis in the interest which she held as tenant by the entirety and the fair market value of interest received from her husband in lieu of alimony or its equivalent. The resulting amounts have been agreed to by the parties. Decision will be entered under Rule 155.
Footnotes
1. See companion case of Murray v. Commissioner,T.C. Memo 1978-352↩.